UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| LAURIANN C.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 2:19cv317 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 423(d), and for Supplemental Security Income (SSI) under Title XVI of the Act, 42 U.S.C. § 1382c(a)(3). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months.

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

. . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings."  *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law."  *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2

2. The claimant has not engaged in substantial gainful activity since December 31, 2014, the alleged onset date (20 CFR 404.1571 *et seq*,, and 416.971 *et seq*.).

3. The claimant has the following severe impairments: migraine headaches; degenerative disc disease of the cervical spine; severe hepatic steatosis; renal colic; and neuroendocrine tumor of the pancreas (30 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d)16.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary wok as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant can lift, carry, push, and pull less than 10 pounds frequently and 10 pounds occasionally, and sit about six hours, and stand and walk about two hours, in an eight-hour day.  In addition, the claimant can occasionally, climb ramps, and stairs, occasionally climb ladders, ropes, and scaffolds, and occasionally stoop, kneel, crawl, and crouch.  The claimant can tolerate a moderate noise level such [as] in a retail environment, and can tolerate occasional exposure to vibration and respiratory irritants such as fumes, odors, dusts, gases, and poor ventilation.  Furthermore, the claimant can have occasional exposure to hazards such as unfettered heights or moving machinery.

6. The claimant is capable of performing past relevant work as a billing clerk.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2014, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 25-31).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on December 10, 2019.  On March 26, 2020 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on April

6, 2020**.** Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 4 was the determinative inquiry.

Plaintiff was born April 23, 1964. (Tr. 69). She filed for disability on November 21, 2016, alleging disability as of December 31, 2014. (Tr. 22).

As of July 2013, Plaintiff was suffering from migraines, cluster headaches and other trigeminal autonomic cephalgias. (Tr. 415). A CT scan of Plaintiff's head in September 2013 revealed a left maxillary sinus retention cyst. (Tr. 419). A CT scan of the abdomen July 14, 2014 demonstrated a fatty liver with a lesion on the left lobe. (Tr. 456). A CT scan of the abdomen in April 2015 displayed diffuse fatty infiltration of the liver, a small simple cyst on the left liver lobe, and left renal stones. (Tr. 468-469). A CT scan of the abdomen in December 2015 showed a

pericardial effusion, fatty infiltration of the enlarged liver, enlarged periportal lymph nodes, bilateral renal stones, and an umbilical hernia containing fat. (Tr. 437-438).

A neurological exam for migraines in January 2016 revealed migraines without aura, neck pain related to degenerative joint disease, and bilateral postural hand tremors. (Tr. 959).

An MRI of the cervical spine in February 2016 demonstrated degenerative changes, worst at C5/6 where there was grade 1 retrolisthesis, facet arthropathy, bilateral lateral recess stenosis, moderate central canal stenosis, and moderate to severe right and moderate left foraminal stenosis; and at C6/7, where there was facet arthropathy, bilateral recess narrowing, mild to moderate central canal stenosis, and severe right and moderate to severe left foraminal stenosis. (Tr. 427-428).

An MRI of the brain in February 2016 displayed a small left maxillary sinus retention cyst and a small cystic area in the left side of the pons which could be an old lacunar infarction or a prominent prevascular space. (Tr. 429-430, 568).

A CT scan of the abdomen in May 2016 displayed atelectasis in both lungs, pericardial fluid, extensive hypoattenuation of the liver, fatty infiltration of the pancreas, enlargement of the tail of the pancreas (possibly a mass), left renal stones, enlarged periportal lymph nodes, bladder wall thickening and a fat-containing umbilical hernia. (Tr. 431-432).

Plaintiff underwent a right foot arthrotomy June 30, 2016. (Tr. 781). She was treated for right foot pain and had reduced range of motion and reduced neuromuscular control in July 2016. (Tr. 533-535).

A CT scan of the abdomen in July 2016 exhibited right hydronephrosis, renal stones, bladder wall thickening, enlargement of the tail of the pancreas, diffuse hepatic steatosis, periportal lymphadenopathy, and under-distention or wall-thickening involving the colon. (Tr.. 507-508).

A CT angiogram in July 2016 showed cardiomegaly, diffuse hepatic steatosis, and bibasilar dependent atelectasis. (Tr. 858-859). A duplex venous reflux study in August 2016 revealed greater than 0.5 seconds of reflux in the greater and lesser right and lesser left saphenous veins. (Tr. 575). There was reduced strength and range of motion in Plaintiff's right foot in October 2016. (Tr. 554). Plaintiff still had right foot pain in November 2016 despite injections and physical therapy. (Tr. 511).

Plaintiff was having a migraine every day in November 2016 with photophobia and dizziness. (Tr. 1017-1018). Despite multiple medications, her migraines were not improving in December 2016 and she was numb in her left arm and fingers. (Tr. 1071). She was seen for a migraine and dizziness in January 2017. (Tr. 520).

An MRI of the cervical spine in January 2017 demonstrated no significant change since February 2016. (Tr. 580). She had reduced range of motion in the cervical spine on exam in February 2017. (Tr. 1084). Plaintiff still had a numb, tingling right foot in April 2017. (Tr. 1148).

Plaintiff was put on Lexapro for depression May 4, 2017. (Tr. 1808). Lexapro was increased in July 2017. (Tr. 1853). Plaintiff, at her mental consultative examination in September 2017, erred sixteen percent of the time in her calculations, could not remember any items out of three after five minutes, made four errors in serial sevens, and the examiner, Dr. Rini, characterized Plaintiff's attention and concentration, memory and social functioning as below average. (Tr. 126, 1162-1163).

The last state agency review was September 25, 2017. (Tr. 126, 129). In November 2017, treating neurologist David S. Rozenfeld, M.D., opined that Plaintiff would miss about four days a month because of her migraines. (Tr. 1167). Plaintiff underwent a nerve block for intractable migraines in February 2018. (Tr. 1171).

A CT scan in April 2018 demonstrated thyroid lesions, severe hepatic steatosis, a pancreatic tail mass, a renal stone, and atelectasis. (Tr. 1358-1359). Plaintiff was admitted for a kidney stone and developed a pulmonary embolism in June 2018. (Tr. 1197). A CT scan in June 2018 showed that her pancreatic mass had grown. (Tr. 1588). She went to the emergency room for migraines in July 2018. (Tr. 1733). She was suffering from migraines in August 2018 despite physical therapy that improved her cervical range of motion. (Tr. 1667, 1726). Plaintiff was still having about 16 migraines a month without much relief from medication. (Tr. 1609-1610).

On September 11, 2018 a biopsy showed a neuroendocrine neoplasm of the pancreas. (Tr. 2023). A benign neuroendocrine tumor of the pancreatic tail and her spleen were removed on October 31, 2018. (Tr. 2042-2043).

In support of remand, Plaintiff first argues that the ALJ's analysis of the Listing of Impairments was inadequate. Plaintiff contends that the state agency reviewers and the ALJ found that Plaintiff's migraines were a severe impairment but failed to consider whether her migraines met or equaled listings 11.02 or 11.03. Plaintiff further contends that the reviewers and the ALJ failed to consider whether Plaintiff's migraines in combination with her other impairments met or equaled listing 11.02 or 11.03. The parties agree that current listings 11.02B and 11.02D succeeded prior listing 11.03, which became obsolete on September 28, 2016. Thus, Listing 11.03 will not be discussed.  Listing 11.02 concerns Epilepsy.

Listings 11.02B and 11.02D require dyscognitive (non-convulsive) seizures at least once a week for at least 3 consecutive months despite adherence to prescribed treatment; or every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitations in functioning. 20 C.F.R. pt. 404, subpt. P, app. 1, 11.02(B), (D).

Effective August 26, 2019, Social Security Ruling 19-4p provides guidance on how to

7

establish that a person has a medically determinable impairment (MDI) of a primary headache disorder and how to evaluate primary headache disorders in disability claims. SSR 19-4p specifies that migraines can medically equal listing 11.02B and/or 11.02D:

> Epilepsy (listing 11.02) is the most closely analogous listed impairment for an MDI of a primary headache disorder. While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her MDI(s) medically equals the listing.
>
> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: a detailed description from an AMS of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).
>
> Paragraph D of listing 11.02 requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02D, we consider the same factors we consider for 11.02B and we also consider whether the overall effects of the primary headache disorder on functioning results in marked limitation in: physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.

Plaintiff does not directly assert that she had dyscognitive seizures. She points out that she had photophobia and dizziness when she had a migraine, but there is no evidence that this equaled a dyscognitive seizure. Listing 11.02 refers to 11.00H1b for a definition of dyscognitive seizures, as follows:

> Dyscognitive seizures are characterized by alteration of consciousness without

>convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur. During its course, a dyscognitive seizure may progress into a generalized tonic-clonic seizure (see 11.00H1a).

https://www.ssa.gov/disability/professionals/bluebook/11.00-Neurological-Adult.htm#11_02. As Plaintiff has not pointed to any evidence of dyscognitive seizures, it is clear that Plaintiff did not meet listing 11.02. However, the ALJ was required to consider whether Plaintiff's combined impairments medically equaled this listing, as there was evidence that Plaintiff's impairments may have met the criteria set forth in SSR 19-4p. Thus, remand is required on this issue.

Plaintiff next argues that the ALJ should have considered Listing 13.20, which covers pancreatic cancer. Plaintiff claims that she had pancreatic cancer, but the evidence she cites in support merely states that she had a "pancreatic neoplasm", which would be a tumor or a cyst. (Tr. 2023). Plaintiff has not pointed to any medical record showing that the neoplasm was malignant. As the Commissioner points out, Plaintiff's final diagnosis in October 2018 was "benign neuroendocrine tumors". (Tr. 2065, 2067). Therefore, the ALJ did not err on this point.

Plaintiff argues that the ALJ should have considered whether her combined impairments medically equaled Listing 13.20. However, Plaintiff has not pointed to medical findings "at least of equal medical significance to those of the analogous listing" as required. *See* POMS DI 24508.010(B)(3). Therefore, the ALJ did not err by not considering whether Plaintiff's combined impairments medically equaled Listing 13.20 and remand is not warranted on this issue.

Next, Plaintiff argues that the ALJ improperly evaluated the medical opinions. Plaintiff notes that Dr, Rozenfeld, a treating neurologist, opined that Plaintiff would miss work four times a month due to her migraines. The ALJ gave Dr. Rozenfeld's opinion only partial weight (Tr. 30). The ALJ agreed with Dr. Rozenfeld that Plaintiff should avoid climbing and heights; thus the ALJ

9

found migraines precluded Plaintiff from performing more than sedentary work and that she should avoid environmental triggers (Tr. 30, 1167). However, the ALJ found that Dr. Rozenfeld's opinion that Plaintiff would miss work about four times per month was not supported by the evidentiary record (Tr. 30, 1167). Although Dr. Rozenfeld noted in the questionnaire that Plaintiff had headaches between two and three times per week, which lasted between 24 and 48 hours (Tr. 30, 1166), Plaintiff improved with Botox injections (Tr. 30, 976, 1625-26, 1652, 1609-10). Notably, in Dr. Rozenfeld's treatment note dated December 2017, the month after completing the questionnaire, Plaintiff reported experiencing only four headaches per month with Botox (Tr. 1652). In May 2018, Plaintiff reported that when on schedule for Botox injections, she had only one headache per month (Tr. 1625-26). Plaintiff contends that the ALJ failed to consider all the factors listed in 20 CFR §§ 404.1527(c) and 416,927(c). Plaintiff is incorrect. The ALJ noted that Plaintiff had seen Dr. Rozenfeld in 2017 and several times in 2018. (Tr. 30). The ALJ referred to treatments that Dr. Rozenfeld performed, thus recognizing that he was a treating neurologist. The ALJ also considered the consistency and supportability of the opinion, finding that portions of Dr. Rozenfeld's opinion "was not adequately borne out by the medical records and appears to place excessive reliance on the claimant's subjective allegations." (Tr. 30). Therefore, this Court finds the ALJ's evaluation of Dr. Rozenfeld's opinion to be supported by substantial evidence.

Plaintiff also objects to the ALJ's analysis of Dr. Rini's opinion. Dr. Rini was an examining psychologist and noted that Plaintiff's attention and concentration, memory and social functioning was below average. (Tr. 1162-63). The ALJ extensively discussed Plaintiff's alleged mental impairments, considering both the opinions of Dr. Rini (an examining consultant) and Dr. Larson (a reviewing consultant). (*See* Tr. 25-26). The ALJ noted, "there is little evidence of psychiatric treatment or documented symptomology" (Tr. 25). Plaintiff took Lexapro for about a

10

year beginning in May 2017 (Tr. 1571-72, 1631, 1808, 1811, 1823, 1825). Thereafter, Plaintiff was not prescribed any other medication, nor did she require any further mental health treatment. Plaintiff's provider found that she had a normal mood and affect, normal behavior, normal judgment, and normal thought content (Tr. 1809, 1824, 1907). Plaintiff did not testify that depression or anxiety limited her ability to work, nor did she report taking any psychotropic medication (Tr. 50; *see generally* Tr. 45-61).

The ALJ also considered Dr. Larsen's opinion that Plaintiff's depression was non-severe (Tr. 107-08). Dr. Larsen explained that Plaintiff had mild or no limitations in understanding, remembering or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself (Tr. 108). In so finding, Dr. Larsen considered Dr. Rini's examination (Tr. 108). The ALJ gave Dr. Larsen's opinion significant weight upon finding it consistent with the evidence (Tr. 25-26). *See Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (finding the ALJ reasonably relied on state agency physicians' opinions, which were supported by the fact that there was scant objective evidence supporting the claimant's allegations). As the ALJ also noted, Dr. Larsen is an expert in Social Security disability evaluation (Tr. 25). *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) (explaining that state agency physicians are highly qualified and experts in Social Security disability evaluation).

On the basis of the above evidence, the ALJ rated Plaintiff's degree of limitation in the broad functional areas as "none" or "mild," which supported a finding that Plaintiff's mental impairment was non-severe (Tr. 26). A claimant's mental impairment will generally be considered non-severe where her degree of limitation is "none" or "mild." 20 C.F.R. § 404.1520a(c)(3), (d)(1), 416.920a(c)(3), (d)(1); SSR 96-3p, 1996 WL 374181, at *1 (providing an impairment is considered not severe if it has no more than a minimal effect on the claimant's ability to do basic

11

work activities).

The ALJ found that Plaintiff had mild limitation in understanding, remembering, or applying information (Tr. 26). The ALJ explained:

> Although Dr. Rini diagnosed the claimant with adjustment disorder with depression and anxiety [Tr. 1163], there is little evidence of mental health treatment throughout the period at issue. In addition, the claimant and her boyfriend stated that she is able to count change, handle a savings and checking account, and enjoys reading [Tr. 339-40, 348-49].

(Tr. 26).

The ALJ next found that Plaintiff had a mild limitation in interacting with others. He explained:

> Despite Dr. Rini's diagnosis of adjustment disorder with anxiety, there is no indication that the claimant has required emergent treatment or hospitalization for anxiety or panic symptoms. In addition, the claimant showed no evidence of thought disorder and was described as being cooperative and communicating in normal speech during her consultative examination [Tr. 1162].

(Tr. 26).

The ALJ next found that Plaintiff was mildly limited in concentration, persistence, or pace. The ALJ explained:

> As indicated above, Dr. Rini diagnosed the claimant with adjustment disorder with depression and anxiety [Tr. 1163]. However, despite some deficits in her calculation and memory skills, the claimant had a largely unremarkable mental status examination and was negative for signs of thought disorder [Tr. 1161-62]. In addition, there is little evidence of sustained mental health treatment throughout the period at issue. Moreover, there is no indication that the claimant engaged in acts of self-harm, required psychiatric hospitalization, or experienced episodes of decompensation (Id.).

(Tr. 26). These findings supported a determination that Plaintiff's mental impairment was non-severe (Tr. 25-27). *See* 20 C.F.R. § 404.1520a(c)(3), (d)(1), 416.920a(c)(3), (d)(1).

As a one-time examiner, Dr. Rini's opinion was not entitled to controlling weight. *See* 20

12

C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (explaining only treating source may be entitled to controlling weight); *see also White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005)(explaining that a physician "who only examined [the plaintiff] once, fits the definition of a nontreating source," and "[a]s a result, . . . the ALJ was not required to assign controlling weight to [the examiner's] opinion"). The ALJ gave partial weight to Dr. Rini's opinion that Plaintiff showed below average attention, concentration, memory, and social functioning skills, but average intellectual ability (Tr. 25, 1163). The ALJ explained that there was little evidence of psychiatric treatment throughout the period at issue (Tr. 25). The ALJ additionally noted that, as discussed above, Plaintiff and her boyfriend acknowledged that she could handle money and read on a daily basis, which was more indicative of mild mental limitations (Tr. 25, 339-40, 348-49). Plaintiff admitted that she could pay attention for "3-4 hours" and had no problem following instructions (Tr. 341, 350). Accordingly, substantial evidence supports the ALJ's evaluation of the opinion evidence and his determination that Plaintiff's mental impairment was non-severe. *Biestek*, 139 S.Ct. at 1153 (stating an ALJ's factual findings "'shall be conclusive' if supported by 'substantial evidence'").

Next, Plaintiff argues that the ALJ was required to obtain an updated medical expert review of evidence submitted since the last state agency review. The last state agency review occurred July 9, 2015. (Tr. 98, 111). The hearing took place September 25, 2017. (Tr. 13). After the last state agency review, hundreds of pages of medical records were submitted. (Tr. 39). Plaintiff contends that the new evidence "changed the picture" and required an updated medical expert opinion. While Plaintiff refers to a host of random medical documents, such as evidence that she fell and hurt her arm, Plaintiff fails to indicate how any of the new medical records would change the outcome of the ALJ's decision, even if they were reviewed by a medical expert. Plaintiff contends that "the ALJ could not properly assess the limitations arising from the removal of part of

13

Plaintiff's pancreas and spleen". However, Plaintiff has not pointed to any additional limitations that should have been incorporated into the RFC due to the removal.

Upon finding the record sufficient to make a decision, the ALJ was not required to obtain any additional evidence. As the Seventh Circuit has explained, after ensuring the record is developed for the 12 months preceding a claimant's application, the ALJ has the discretion to determine how much evidence he needs to make a decision. *See Luna v. Shalala*, 22 F.3d 687, 692-93 (7th Cir. 1995) ("This court has commented on the difficulty of having a 'complete' record as 'one may always obtain another medical examination, seek the views of one more consultant, wait six months to see whether the claimant's condition changes, and so on.'" (quoting *Kendrick v. Shalala*, 998 F.2d 455, 456–57 (7th Cir.1993). Courts will defer to the ALJ on how much evidence is needed. *See Gardner v. Colvin*, No. 2:14-cv-166-PRC, 2015 WL 4946146, at *5 (N.D. Ind. Aug. 19, 2015).

As discussed above, the ALJ did a thorough evaluation of the evidence in the record, including the evidence submitted after the state agency opinions. "[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). Here, the ALJ reviewed the entire record and was able to make a decision based on the available evidence. As such, no further evidence was needed. Because the ALJ relied on substantial evidence in the record to make a decision there is no basis for remand on this issue.

Next, Plaintiff argues that the ALJ erred in his assessment of her credibility and subjective symptoms. The ALJ, as the fact-finder, has the sole discretion to weigh a claimant's complaints about her symptoms against the record as a whole. 20 C.F.R. §§ 404.1529(a), 416.929(a). "So long as an ALJ gives specific reasons supported by the record, we will not overturn his credibility

14

determination unless it is patently wrong." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). The ALJ evaluates a claimant's subjective complaints by engaging in a two-step process in which the ALJ determines whether the claimant has an impairment that could reasonably cause the alleged symptoms, and then evaluates the claimant's statements about the limiting effects of her symptoms against the record. 20 C.F.R. §§ 404.1529, 416.929. In evaluating the intensity and persistence of symptoms, the ALJ considers such factors as the objective medical evidence, medical opinions, daily activities, type of pain/symptoms, precipitating and aggravating factors, medication and other treatment, any other measures used to relieve symptoms, and any other factors concerning functional limitations. 20 C.F.R. §§ 404.1529, 416.929; *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). An ALJ's decision need only be specific enough for a reviewing court to be able to determine the weight given to the claimant's statements and the reasons for that weight. SSR 16-3p, 2017 WL 5180304, at *10; *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004).

Here, the ALJ found that Plaintiff's subjective complaints about her limitations were not entirely consistent with the medical and other evidence (Tr. 28). *See Carnahan v. Comm'r of Soc. Sec.*, No. 1:16-cv-398, 2017 WL 5122389, at *7-10 (N.D. Ind. Nov. 6, 2017) (recognizing it is well-established that the courts must "defer to an ALJ's credibility finding that is not patently wrong" (citing *Curvin*, 778 F.3d at 651)).

The ALJ explained that with respect to Plaintiff's complaint of neck pain, Plaintiff's MRI revealed degenerative changes that were largely mild in nature (Tr. 28, 566). She had reduced range of motion in her neck and slightly diminished motor strength, but had a normal gait, intact deep tendon reflexes, normal cranial nerve functioning, and no sensory deficits (Tr. 29, 1084-85). The ALJ further noted that Plaintiff had not undergone spine surgery throughout the relevant period (Tr. 28-29). In fact, an examining neurosurgeon specifically found that Plaintiff did not require

15

surgical intervention (Tr. 1085). Despite Plaintiff's claim that she experienced migraines one or two times per week lasting 36 hours or more (Tr. 28, 57), the medical evidence revealed that Plaintiff's migraines improved with Botox injections, as discussed above (Tr. 30). With respect to Plaintiff's pancreas, a tumor was benign as discussed above (Tr. 30, 2065, 2067; *see also* Tr. 1921, 2042-43, 2089). With respect to renal colic, a CT scan in December 2015 showed evidence of bilateral renal stones, but noted that they were non-obstructing in nature and Plaintiff did not show evidence of significant hydronephrosis (Tr. 28, 618). In March 2018, Plaintiff went to the hospital and underwent a procedure for an obstructive renal stone, but was discharged four days later in stable condition (Tr. 29, 1233-34). The ALJ further considered the medical source opinions discussed above, in finding that Plaintiff was limited to a range of sedentary work.

Contrary to Plaintiff's argument, the ALJ did not reject Plaintiff's subjective complaints based solely on objective evidence. The regulations provide that "[o]bjective medical evidence . . . is a useful indicator" in evaluating "the intensity and persistence of [her] symptoms and the effect those symptoms, such as pain, may have on [her] ability to work." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *see also Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010) ("Although an ALJ may not ignore a claimant's subjective reports of pain simply because they are not supported by the medical evidence, discrepancies between the objective evidence and self-reports may suggest symptom exaggeration."). Rather, the ALJ considered the relevant factors discussed in 20 C.F.R. §§ 404.1529 and 416.929, including the objective evidence (including diagnostic testing and clinical findings discussed above); medical opinions (discussed above); daily activities (*i.e.*, Plaintiff's reports that she could handle her finances and read (Tr. 25-26, 31)); Plaintiff's reported pain/symptoms (Tr. 28-30); precipitating and aggravating factors (*i.e.*, Plaintiff's allegation of difficulty standing, walking, and lifting (Tr. 28)); and medication and other treatment (including

16

Botox, which helped her migraines), and that neck surgery was not recommended or required despite her claim of disabling neck limitations (Tr. 28-29). Of course, an individual need not be pain-free to be found not disabled. *See Hays v. Sullivan*, 907 F.2d 1453, 1458 (4th Cir. 1996). "To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude substantial gainful employment. Otherwise, eligibility for disability benefits would take on new meaning." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983). Because substantial evidence supports the ALJ's analysis of Plaintiff's credibility and subjective symptoms, remand is not required on this issue.

However, as discussed above, the Court will order remand on the issue of whether Plaintiff's impairments medically equal Listing 11.02.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: December 9, 2021.

s/ William C. Lee
William C. Lee, Judge
United States District Court